Good morning. Dean Stewart for Mr. Helguero. I wanted to initially point out that at page 34 of the government's brief, they set out the facts regarding their request for the Juul instruction in this case. And they say that they suggested the Juul instruction in order to give the jury an alternative theory to convict. My suggestion is that under the Heredia case and also the Barron case, they can't flatly do that. And really, I'm going to suggest that that should end the inquiry right there. And my temptation is to say that. Let me ask you, would it be your position that that somehow creates per se reversible error and that we wouldn't even look to whether the error was harmless in the context of the overall case? You know, harmless error is an interesting area on this, because I haven't seen harmless error discussed in any Juul instruction case. Well, isn't it discussed in the Fulbright case, which is pretty close to this? Your Honor, I'm sorry. I missed that case quite candidly. Because the problem here seems to me to be similar to there, which is the instruction just seems wildly inappropriate because it is – because the issue here was not a question of factual knowledge. Anyway, it was a question of how he understood a question, I suppose. So why isn't this just kind of apples and oranges? I mean, it doesn't seem to have anything to do with the case, but for that very reason, isn't harmless. No. And I agree with part of that. The part that I don't agree with is the oranges part of it. I would suggest that this was an acquittal case. This is a case where he would have been acquitted by the jury if it weren't for that instruction. Well, why? Because the instruction came back and said that if you find he knew he was a felon, okay, basically you must convict. That's the way the instruction came out because it was an altered Juul instruction. I'm sorry. You need to explain. Yes. I'm sorry. I'm not making myself clear. The instruction to the jury was that if you find he knew he was a felon, and that's the way the instruction is, then basically it goes on to say that you must convict him. And everybody stipulated that he was a felon. It was never even an issue in the case, but the actual instruction itself. But the question was whether he knew he was a felon in the sense that the question was asking him the question whether he was a felon. Yes. Yes. I mean, he knew he didn't deny the conviction or the gun charge or the prior charge, but it was a question of he thought that somehow, I guess like IRS records and other things, that after seven years they evaporate. Right. He described it as bankruptcy. He happened to be wrong, like bankruptcy. Bankruptcy or a DUI. And he told anybody that would listen that that was his position on that. The jury never really had a chance to evaluate that position, though, because this Juul instruction comes in and tells them, and I'm sorry, I don't have the instruction in front of me, but the instruction says that you need to concentrate on whether or not he knew he was a felon. And if you find he was a felon, then, and I'm paraphrasing, you must convict him. And I would suggest that's exactly what happened here. Well, it says that whether he was aware of a high probability that he was convicted in any court of a crime for which the judge could have imprisoned or defended for more than one year, which was almost the exact words of the question that he was asked. Right. So in a way, this was more forgiving than what he was entitled to. I mean, he never said, I didn't know whether I was convicted of a crime for which a judge could have been imprisoned for more than one year. He said, I, for some reason, didn't think that I had to answer the question yes, even if I was. Right. So it was sort of a mistake of law problem. Sure. The problem is this instruction directs the jury in this direction when, in fact, it should have been going in this direction. What instruction do you think would have been appropriate? We wrote it this morning at Starbucks. I would have written. No, wait a second. That's a good place to write jury instructions, but it's a little late. No, I agree. I certainly agree. I wasn't trial counsel. No, I understand. I understand. I mean, I'm sure you would have gone to Starbucks earlier if you were trial counsel, but the real question is, was there a requested instruction that was an alternate to the jewel or that would have put him on neutral footing? No. There was a vociferous, I think exactly that word, objection to it, but that was it. There was no alternative presented. And to that extent, I'd add that to my list of IAC claims at the end of the third issue. Once one is looking at the actual requirements under Heredia to get a jewel instruction, there are, of course, the three factors that have been set out. First, that the individual actually suspected. Second, that they deliberately avoided finding out. And third, that it was crafted to later be a defense. But what is the it in this case? I'm sorry? What's the it? What was the it he didn't find out or arguably didn't find out or anything else? No, I'd be very interested to hear what government counsel has to say about that, because I challenged them in my brief to put out what are the facts here that suggest jewel is appropriate? What are the facts that say he suspected of anything? And as far as I can tell, their answer back was he was a felon, therefore, he should have known. I think that's what they're trying to argue here. And if that's true. Your position is he wasn't unclear about anything. Right. He was perfectly clear. Yes. His whole case was I was perfectly clear that this didn't apply to me for some reason. And that's why I'm having trouble seeing how this hurt him. It was just kind of beside the point. It didn't have anything to do with what he was arguing. Well, I don't think so. Again, in the sense that it's the district court directing them to focus on whether or not he knew he was a felon. Which was the question, because the question in the – I mean, insofar as that's the problem, then I don't know what the problem is. What's different about a Juul instruction is that it substitutes high probability for actual knowledge. Right. But the question of whether he knew he was a felon is exactly the question, because that's what he was asked. Right. And this was, therefore, an actual knowledge case, period. There should have been no Juul instruction. You're saying what was wrong with the Juul instruction is that it focused the question on whether he actually knew he was a felon. But that is the question. So what's the problem with it, if that's what you see it as? No. The problem with it is that it focuses on the high probability, but that's besides the point because it isn't what he was arguing. Right. Or anybody was arguing. Therefore, the instruction shouldn't have been given, but it's the modification that the district court made of the instruction, which talks about not his knowledge, absolutely not his knowledge, but at least as to whether or not he was a felon, not whether he knew he had to check the correct box and disclose that he was a felon. So it does, I'm sorry, I keep, I've argued that wrong. It's actually two different parts of knowledge. Let me just stop for a second and ask you, you know, we know what felons are from a legal standpoint, but the question was not are you a felon. The question was have you ever been convicted in any court of a crime for which the judge could have imprisoned you for more than a year, even if the judge actually gave you a shorter sentence. So that's actually a fairly precise question to which you have to answer yes or no. I'm having trouble understanding how the Juul instruction, which I think was an error, however, collided with this precise question. And again, my position is that the emphasis was changed by the Juul instruction from the defense, which the court just mentioned, to the issue of whether or not he was a felon, which wasn't an issue. And the district court really changed what was going on in this trial by allowing the Juul instruction. Do you want to save the remainder of your time? I really would like to. Thank you. Okay. Please, the Court. I'm Michael Rofel on behalf of the United States. Your Honors, the government's position is that the Juul instruction here was proper because there was evidence that would support both the conviction on actual knowledge and on deliberate ignorance. Of what? On deliberate ignorance because of the defendant's own defense, and his defense was deliberate ignorance of what? Of whether his conviction fit into the terms of the form. Now — Well, if that was a problem, that isn't what the instruction said. It didn't say whether he was aware of a high probability that the question meant to be asking him what meant to apply to all convictions as opposed to convictions only for seven years. It said whether he was aware of a high probability that he had been convicted in any court of a crime. So insofar as there is an issue about how he understood the question, this did not direct him at that, direct the jury to that question. Well, Your Honor, the language used in the Juul instruction was the language the jury heard over and over and over in questions from counsel and answers on the form. But he never said — his defense was not, I didn't understand this question. His defense was, I understood it to mean X. Not, I didn't understand it, right? What was the — ordinarily, deliberate ignorance is you could have done some investigation to find something out, but you didn't. Was that his defense? Was that the government's theory? That on the second step of the Juul process, whether he took — whether he investigated his suspicion, that would be the government's theory. He didn't even ask a question. He did — what's strange about this case is that his defense comes from nowhere. I mean, this is a clear question. But, you know, normally the Juul progeny is a little murky, admittedly. But it starts with a question of fact. We then have the more recent Fulbright case, which says you can also have a mistake of law. But he wasn't mistaken about what happened to him. He was mistaken about the legal effect of it. Is that correct? That is one way to put it. He could have — one could also put it he was mistaken about whether his conviction fit into the language of the form. I mean, in this — it might help. What Fulbright says is it's harmless to give a Juul instruction. I mean, that's what it seems to be. It doesn't say it was right. It says it was harmless. That's why I don't understand why you're arguing that it was right as opposed to harmless. I'm sorry. We certainly agree it was harmless because all the evidence supported his guilt here. And I don't disagree with that. If the Court is going to look at this case so that all the evidence is of actual knowledge. It was harmless in Fulbright because what it was directed at was whether he knew the law as opposed to knew the facts. And that's sort of true here. I'm not going to disagree with that, Your Honor. If that's the way the Court looks at his defense, then it is one way to look at his defense. And it seems like a question of going too far. The United States, you know, insists on the Juul instruction. You now have put your prosecution in jeopardy or we wouldn't be here. And why would you need such an instruction in a straightforward case of filling out a form like this? Well, I think, Your Honor, it came about because of defendant's own defense. There's a case that we cited in passing called Shannon, United States v. Shannon, in the brief where the government had put on what this Court termed good evidence that the defendant had mailed a threat in an envelope. And this Court upheld the Juul instruction on the basis of the defendant's defense, which was even though the government had good evidence of actual knowledge in its case, this Court held that when the defendant said, I never opened the envelope, I didn't know what was in the letter, that that created a situation where what we're talking about is. And that's a true Juul situation of like, you know, okay, I'm not looking kind of thing. I mean, that's precisely what it's geared for, isn't it? Well, yes, Your Honor. And in this case, what defendant said, there's a question that we believe is clear. Essentially, have you been convicted of a felony? The defendant decides in his mind, I'm going to interpret that as, have you ever been convicted of a felony, and further put a seven-year limit on that. And is there any evidence that he consciously did that so as to not find out the truth? Well, yes, Your Honor, because there's – in this case, there's another form the defendant filled out at the same time in which it's the State form, in which he was asked, have you ever been convicted of a felony? And he lied on that. Therefore, he may be lying about the whole thing. But where is the evidence or where is the defense that says – or the theory that would say that he sat and said to himself, well, I'm going – I don't know what this question means, so I'm just not going to find out because I'm afraid of what I'm going to find out is going to be against my interest. That's not what he's saying. He's saying this is what I thought it meant, and he could be lying. He may well be lying. He probably is lying. But that doesn't have anything to do with the Jewell defense. Well, I understand, Your Honor, but the way we tried this case, of course, was on actual knowledge, and that's what our evidence was. We thought that based on him saying – and there's no dispute about the facts here in any relevant way. Exactly. And since there's no dispute against the facts, it's very hard to say what Jewell has to do with this. Well, except when the defendant does say, you know, what I'm thinking is I'm going to interpret this question in a certain way, and that's why I, you know, I believed in this technicality. And the strange thing here is the technicality isn't even based on the text. It comes from nowhere. And when the defendant says that, he's sort of – by testifying as to what's going on in his own head, he's created – I guess the other thing is if this was a Jewell instruction, it was probably an inadequate one, because it doesn't have the conscious disregard provision in there. Well, it doesn't. It says if he was aware of a high probability. It doesn't say, and consciously didn't find out. It does at the very end of the first paragraph, Your Honor, when it says, and he deliberately avoided learning the truth. Is that it? Yes. And so if one were to buy into the defendant's position on appeal that the first part was somehow a directed verdict, which it wasn't, you know, it wouldn't make any sense with this extra instruction that, and deliberately avoid learning the truth. That makes this instruction clear enough for the jury that he's aware of a high probability that his conviction fits into the form, the language they've heard over and over, and he deliberately avoided learning the truth. I mean, this would make more sense to me if it were one of these things where you were in a State where the sentence was suspended and it's always unclear whether you've really been convicted. Like in Montana, they have that – it's not really expungement, but it's kind of the limbo situation. That might make sense, but I'm having a little trouble fitting it in here. Well, I would suggest that this, that comes from how bizarre a defendant's defense is here. If this were a case where the defendant was convicted of what California State courts call a wobbler, a conviction that could be either a misdemeanor or a felony, and he, it's the exact same facts as here. He comes in and says, I'm interpreting the form, and I had this belief that my wobbler was not, does not count as a felony under the form, then this whole process makes more sense because there's some rationality to his defense or some textual basis. In order for that to make sense, you have to be regarding the question essentially as a fact, the meaning of the question as a fact. And maybe it is, but – and not as the legal issue of what it is that would be disqualifying. But they're very close because obviously what the questioner's trying to find out is whether you have a conviction of the kind that's legally disqualifying. I think that's right, Your Honor. The defendant would have to be aware of the fact that his conviction fits into the form. And if one can't count that as the sort of – I'm trying to separate that out from the question because certainly if the question was whether he knew that his conviction fits into the legal requirement, that would have nothing to do with his conviction and wouldn't be the subject of a dual instruction. Right. So somehow you have to cut that really fine and say there's a difference between what he knew about the law and what he knew about the question which was trying to get at the law. Yes. But I do think this is analogous to if we put on a case with someone carrying drugs in a suitcase and our affirmative case is this person knew that there were drugs in the suitcase, but his testimony becomes I never looked in the suitcase. I didn't – what was going on in my head is that I didn't know what was in the suitcase. We then, based on his testimony, would get a dual instruction if the facts overall warranted it. Why don't you address – let's just assume for talking purposes that this modified dual was inappropriate. What is your position on whether it's harmless or not? It certainly is not – it certainly is harmless because the evidence that includes him answering at the same time the question have you ever been convicted of a felony, him lying on that question is evidence that you wouldn't usually get in something like this. And that's – he does that at the exact same time, you know, going to the store to buy the gun. He answers the question that has ever in it. He lies on it. That shows that his answer here where he says he's creating this – I think you should have been disturbed by this and asked the question of what do you mean by knowingly. How – just – I was wondering when – after that was answered, how long was it until the jury came back with a verdict? I think it's about three and a half hours, and I read that in the briefs. Now, Your Honor, the Alvarado case cited in the briefs, the jury had deliberated for two days. Then the jury asked a question. My time's almost up. May I answer? Go ahead. In Alvarado, the jury deliberated for two days, comes back and asks for clarification on knowledge. The court gives a jewel instruction. The jury comes back in a half hour with a conviction. In Alvarado, this court held that the jewel instruction was erroneous, but the error was harmless. And that's even the, you know, situation as far as the timing of what the jury does much more dramatic than here. And what I would say – I mean, what this means is the court doesn't really look at how long it took the jury to do things because one doesn't know what was going on in the jury. How long was the jury out before they asked the question? Your Honor, I actually don't know the exact answer to that. Okay. But they were obviously bothered by something. I mean, I think – I mean, what is bothersome about this case is that it's a little hard to – I think for some people to know why the government was doing this prosecution of this person and maybe why they were bothered. Well, that's more a question really in these days for under Booker. And the defendant got a huge sentencing break in this case from a 37-month sentence to a 12-month sentence from Judge Stotler. And that may be because he wasn't buying the gun for reasons that were as horrible as they could have been. And that's where – you know, the jury may have been bothered by that. But formally, legally, of course, that should be a question for sentencing, which it seems to have been here. And thus you get what we think is a just result in this circumstance, which is a conviction but a, you know, more lenient sentence if the facts warrant it for that reason. Thank you. Thank you, Your Honors. Just one or two – excuse me – quick notes. The timing on the conviction after the Juul instruction, the time was three and a half hours. I agree with that. But it was over lunch hour. So nobody really knows how long it took them once they were given the instruction. And I agree with the Court that pretty clearly they were troubled by the issue. And the District Court thought this was some guidance. I don't think it really was guidance. It sort of muddied the water is what happened. And again, our position is that it was basically a directed verdict. But he had been found not guilty if he had not given the Juul section. Of course, Your Honor. He says, I didn't have the guilty knowledge. Therefore, I am not guilty. Yes, I did X. And I saw that was on the form. But in my mind, I could do this legally. It was not illegal because I thought it was like a bankruptcy or a DUI. So it's strictly a knowledge offense. Is that a defense? I mean, if the question says X and you choose to understand it to mean Y. Yes. I mean, as Judge McEwen says, there are circumstances in which there would be a legitimate question. Sure. But this one doesn't look like one. Well, the problem is that if that's not a defense, then it's a strict liability offense. The minute you hit that thing, you are a felon in the story. There are instances in which there would be a legitimate question as to whether the conviction came within the question. Was it expunged? Was it suspended? Was it probation, et cetera? But this one was none of those. Right, right. No, it is an unusual defense, no doubt about it. But one of the other points that I needed to make was. It's kind of an ignorance of the law modified defense. That's exactly, exactly what it is. Unique, but why should you not be able to put that on? And certainly that's maybe it shouldn't have here, but the jury should have had a nice clean slate to check it out. But moreover, then you're walking directly into the problem that that's not what a Juul instruction is about. Right. It's not about ignorance of the law. So therefore, and you're walking into the Ninth Circuit case which said, therefore, if you give an instruction, a Juul instruction erroneously when it's really an ignorance of the law problem, Fulbright, it's harmless because ignorance of the law isn't a defense. Right. However, the distinction here may be these facts. And like I said, it's a very unique defense. And it's an actual knowledge case right down the line until the government brought up the Juul instruction only in jury deliberations. They did not ask for the instruction in the instruction conference. It was not given with the rest of the instructions. It was a hail Mary pass because they saw this jury was troubled. And I'll submit. Thank you. Thank you. The case of the United States v. Talguero is submitted. Thank both counsel for your arguments. And United States v. Larumba-Zuniga and United States v. Anaya, submission is deferred.
judges: Berzon, McKeown, King